Lonnie R. Lenderman and Era E. Lenderman v. Commissioner.
Lenderman v. Commissioner
Docket No. 87432.
United States Tax Court
T.C. Memo 1963-110; 1963 Tax Ct. Memo LEXIS 234; 22 T.C.M. (CCH) 511; T.C.M. (RIA) 63110; April 17, 1963
James P. Mattimoe, Esq., Guardian Bldg., Detroit, Mich., for the petitioners. Ralph W. Eisnaugle, Jr., Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: A deficiency has been determined by the respondent in the income tax of petitioners for the taxable year 1958 in the amount of $132.45. The issues to be decided are (1) whether respondent has erred in disallowing as a business expense deduction the amount of $478 expended by Era E. Lenderman in acquiring 18 semester hours of college credit and (2) whether he has erred in disallowing as a business expense deduction $101 expended by her in acquiring 2 semester hours of graduate college credit. Findings of Fact Stipulated facts are found as stipulated. *235 The petitioner, Era E. Lenderman, is married to petitioner Lonnie R. Lenderman and during 1958 they resided in Lincoln Park, Michigan. They filed a joint Federal income tax return for the taxable year 1958 with the district director at Detroit, Michigan. A deficiency was determined by respondent in income tax for the taxable year 1958 in the amount of $132.45 by reason of the disallowance of educational expenses incurred by Era during the taxable year 1958. During the years 1952 through 1956 Era attended Wayne University, Detroit, Michigan; Walsh Institute; and Michigan State Normal College, Ypsilanti, Michigan. She earned a total of 106 semester hours of college credit during this period. On January 29, 1957, Era was issued a State Limited Certificate by the State Board of Education for the State of Michigan. The State Board of Education is granted authority and required by statute to prescribe the requirements for and to issue all licenses and certificates for teachers in the public schools of the State of Michigan. The Teachers' Certification Code issued by the State Board of Education - Department of Public Instruction - State of Michigan, prescribes the basic requirements, *236 description, and validity of all certifications. The Teachers' Certification Code contains the following pertinent provisions concerning a State Limited Certificate: CHAPTER I MICHIGAN TEACHERS' CERTIFICATE * * *
III. THE STATE LIMITED CERTIFICATE AND RENEWAL A. The State Limited Certificate Description. The State Limited Certificate may be issued to a candidate who has satisfactorily completed a two-year curriculum (60 semester hours or 90 term hours) as authorized by the State Board of Education, in an institution approved by the State Board of Education for the purpose of qualifying candidates for this certificate. Validity. The State Limited Certificate is valid for a period of three years from date of issue and qualifies the holder to teach in the elementary grades of any school district except a school district which maintains an approved high school. * * *
CHAPTER III LEGAL PROVISIONS AND ADMINISTRATIVE REGULATIONS * * *
Administrative Regulations of the State Board of Education A. GENERAL * * *
12. Expiration of Certificate All limited and provisional certificates expire on June 30 of the expiration year indicated on the certificate. *237 Those certificates granted between April 1 and June 29 date from the June 30 immediately following the time of granting. Those certificates granted between July 1 and March 31 date from the immediately preceding June 30. * * *
C. LIMITED CERTIFICATES * * *
4. Cancellation of Limited Certificates No person can be employed to teach in any school district unless he is legally qualified by holding a valid certificate. In order that the holder of any limited certificate may retain without interruption his status as a legally qualified teacher, he must make application for renewal to the State Board of Education between April 1 and September 1 of the year the certificate expires; if the candidate, on the expiration of the certificate, does not arrange for renewal as here stated, he will forfeit his status as a legally qualified teacher, and therefore will not be permitted to teach. He will, however, remain eligible to make application for renewal until June 30 of the year following expiration of his certificate, after which date renewal privileges are cancelled. * * * Beginning January 1957 and ending June 1957 Era was employed by the Board of Education of Lincoln Park, *238 Michigan, as an elementary school teacher. Era held a State Limited Certificate and a State Board Special Certificate during this period. A State Limited Certificate is valid only in nonhigh school districts. The Board of Education of Lincoln Park, Michigan, is located in a high school district and, therefore, the superintendent of the school district was required to, and did, apply to the State Board of Education for a State Board Special Certificate for the petitioner. A State Board Special Certificate is granted upon the recommendation of the superintendent of the district in which the teacher is to be employed when the superintendent states that he has been unable to employ a fully qualified teacher for the position. Special Certificates expire on June 30 of each year and are valid only as stated on the face of the certificate. Renewal requires the completion of a minimum of 6 semester hours of acceptable college credit subsequent to the date of issue. Era's Special Certificate to teach in the Lincoln Park School District expired on June 30, 1957. No contract renewal rights were provided in her employment contract. However, by virtue of the issuance of the Special Certificate, *239 Era did acquire the right to have her contract renewed unless a fully qualified teacher was available for hire at the time she sought its renewal. Era was informed by letter dated June 6, 1957, from the superintendent of Lincoln Park Public Schools that to secure a renewal of her Special Certificate for 1957-58 it was necessary to submit a transcript of credits to the State Board of Education showing that she had earned 6 additional hours of college credit during the current year. On July 15, 1957, the superintendent of the Lincoln Par- Public Schools filed an application designated "Superintendent's Application for Special Certificate, School year 1957-58," with the State Board of Education for renewal of Era's Special Certificate. This application is used by school superintendents in the State of Michigan to apply for Special Certificates for a teacher who needs such certificate to qualify him or her for teaching in a high school district. Between January and July of 1957 petitioner obtained 16 semester hours of additional college credit. The application was granted. During the school year 1957-58 Era was employed by the Lincoln Park Public Schools as a teacher in the elementary *240 grades. She held a State Limited Certificate and a State Board Special Certificate during said school year. The Special Certificate expired on June 30, 1958. Beginning January 1, 1958, and ending August 1, 1958, Era earned an additional 18 semester hours of college credit from Wayne University, Detroit, Michigan. She paid the cost of the books and tuition attributable to these college credits in the amount of $478. On August 1, 1958, Era received a Bachelor of Science degree from Eastern Michigan University, Ypsilanti, Michigan. During the school year 1958-59 Era was employed by the Lincoln Park Public School System, which is located in a high school district, as a teacher in the elementary grades. On September 15, 1958, Era was issued a State Elementary Provisional Certificate. The Teachers' Certification Code contains provisions concerning a State Elementary Provisional Certificate and renewal thereof, which provisions differ from those relative to the State Limited Certificate. The pertinent provisions concerning the Provisional Certificate are as follows: CHAPTER I MICHIGAN TEACHERS' CERTIFICATE I. THE STATE ELEMENTARY PROVISIONAL AND PERMANENT CERTIFICATE A. The State *241 Elementary Provisional Certificate Description. The State Elementary Provisional Certificate may be issued to a candidate who has been graduated with a Bachelor's degree and who has completed a curriculum for elementary teachers approved by the State Board of Education in an institution approved by the State Board of Education for teacher education purposes. Validity. The State Elementary Provisional Certificate qualifies the holder to teach for a period of five years from the date of issue, in the elementary grades of the public schools of the State of Michigan. B. The State Elementary Permanent Certificate Description. The State Elementary Permanent Certificate may be issued to a candidate who has held a State Elementary Provisional Certificate provided the candidate has met the following conditions: 1. Application must be made within one year following the expiration of the State Elementary Provisional Certificate. 2. a. The candidate must have taught successfully three years in elementary schools within the five-year period defined by the validity of the provisional certificate. b. The candidate must have earned 10 additional semester hours (15 term hours) of credit *242 in an approved institution subsequent to the date of the issue of the original State Elementary Provisional Certificate. c. Credit earned subsequent to receiving the State Elementary Provisional Certificate whether leading to a master's or higher degree or not, may be counted toward (1) requirements for the State Elementary Permanent Certificate, or (2) additional majors or minors. 3. The sponsoring institution shall make recommendation concerning permanent certification. This recommendation shall be made following the submission of evidence by the applying candidate or following the collection of evidence by the sponsoring institution. * * *
CHAPTER III LEGAL PROVISIONS AND ADMINISTRATIVE REGULATIONS * * *
Administrative Regulations of the State Board of Education * * * B. PROVISIONAL AND PERMANENT CERTIFICATES * * *
3. Provisional Certificate Must Be Changed to Permanent Certificate To be qualified for teaching at the expiration of the Michigan Elementary Provisional Certificate or of the State Secondary Provisional Certificate the candidate must qualify within the provisional period for the State Permanent Certificate. In the event the candidate *243 does not qualify for the State Permanent Certificate within the provisional period, the privilege of candidacy for the Permament Certificate is forfeited. To qualify for reconsideration, the holder must meet the conditions stipulated by the State Board of Education to apply to the case concerned. Subsequent to the issuance of the State Provisional Certificate, Era earned 2 semester hours of graduate credit during 1958 at Wayne University. She paid the cost of tuition and books for these graduate credits in the amount of $101. During the year 1961 Era completed the necessary educational requisites for a Master's degree from Wayne University. Era was issued a Permanent Certificate by the Michigan State Board of Education during the year 1961. The requirements for employment of Era's immediate employer, the Lincoln Park Public School System, do not differ from those requirements set forth by the Michigan State Board of Education. Ultimate Findings Era in January of 1958 and on June 30, 1958, did not possess the minimum qualifications to teach as an elementary school teacher in the Lincoln Park school where she was employed. Era's acquisition of 2 semester hours of postgraduate *244 credit in 1958 was primarily for the purpose of maintaining her employment upon the expiration of her Provisional Certificate. Opinion It is so well settled as to require no citation of authority that a taxpayer seeking a deduction must bring his case squarely within some section of the Internal Revenue Code or regulation of the respondent interpreting a provision of the Code. The section of the 1954 Code under which petitioner claims propriety for her educational expense deductions is section 162(a) [1] and the regulation interpreting the section is section 1.162-5(a) and (b). [2] We are impelled to hold herein that Era has failed to sustain her burden of proof under both except with respect to the 2 postgraduate credit hours obtained late in 1958. *245 We find it impossible on this record to hold in accordance with the regulation set forth in the margin that Era's educational expense in obtaining 18 credit hours leading to her Bachelor's degree was required in order to maintain her employment or to hold that the education acquired was for the purpose of increasing her skill as an elementary school teacher. It is true that Era testified that she had obtained the aggregate 20 hours of college credit to hold the job she had and to become a better teacher, but this testimony unsubstantiated by substantive evidence in its support, is nothing more than a self-serving statement and is not entitled to great weight. The record does indicate the educational requirements under Michigan law and the regulations of the State Board of Education for issuance and renewal of a limited certificate, a special certificate, a provisional certificate, and the issuance of a permanent certificate, but, although the stipulation indicates that Era acquired "an additional 18 semester hours of college credit" from January to August of 1958, we can nowhere glean from the record any information as to the nature of such additional education or whether all of *246 it or any of it was of a type which would have a bearing upon her skill as an elementary school teacher. Because of Era's burden of proof, if for no other reason, we are not justified in resorting to mere conjecture on this point. The record is especially confusing when it is considered that prior to January of 1958 petitioner already possessed an aggregate of 122 hours of college credit which, according to petitioner's brief although not proved, is more than sufficient for the obtaining of a Bachelor's degree. We are unable to conclude from the record before us that, as of January 1, 1958, through the term of Era's special certificate ending in June of that year, Era possessed the minimum qualifications for the position of elementary school teacher in the Lincoln Park school where she was employed during that period. Her position during that period was clearly temporary and her right to continued employment in the same place and capacity was contingent regardless of her attainment of 6 hours of additional college credit during 1958 before the start of the new school year in September. It was contingent because she clearly had not obtained full qualification and must therefore give *247 way to a "fully qualified" teacher if one was available for hire at the opening of the new school year. Until she had obtained the 75 credit hours required by Regulation R-390.531.d of the State Board of Education she was not "fully qualified. [3] The expense of the attainment thereof would necessarily be personal in nature and nondeductible under respondent's quoted regulation. Era's rights to renewal of her teaching contract under the Tenure Act of Michigan could arise with respect to the position in question only upon her attainment of the 75 hours of credit referred to above. Only then did she have assurance of continued employment as against others possessing the minimum educational qualifications seeking that position. Because the record is bare of any evidence as to whether the full 18 hours of credit obtained by Era between January 1 and August 1 of 1958 were required to bring her qualifications to the 75-hour total required by Regulation R-390.531.d of the State Board of Education and because the burden of proof is upon Era, we assume the fact to be true. It follows that all her expense in obtaining the 18 hours of credit was for the purpose of providing her with minimum qualification *248 for the position of elementary school teacher in the Lincoln Park school, is personal in nature, and therefore nondeductible under section 162(a). It seems clear to us that although Era at the beginning of the 1957-58 school year had the minimum qualifications for her employment for that one year, she did not have the minimum qualifications for such employment beyond the close of the 1957-58 school year. Any further employment in her position although, in form, appearing to be on the basis of a renewal of her existing contract was in fact and in essence founded upon a new annual contract. Had Era's expenditure of educational expenses in 1958 been necessary in order *249 that she might hold her employment for the 1957-58 school year, it would be deductible, but such expenses being here related only in effect to the acquisition of a new contract of employment at the opening of the 1958-59 school year, such expenses are to be regarded as personal in nature. There is no real dispute here regarding the applicable law or regulation. The controversy arises because petitioner contends she has paid expenses for education necessary to maintain employment on a permanent basis. She cites United States v. Michaelson, 313 F. 2d 668 (C.A. 9, 1963), and Devereaux v. Commissioner, 292 F. 2d 637 (C.A. 3, 1961), reversing a memorandum opinion of this Court, and Commissioner v. Elmer R. and Bernice E. Johnson, 313 F. 2d 668 (C.A. 9, 1963), affirming a memorandum opinion of this Court and considered by the Ninth Circuit with United States v. Michaelson, supra.We think these cases are distinguishable from the case at bar. Michaelson, supra, does not involve a teacher employed on a temporary basis. It is, however, support for our holding here regarding the expenses of the 2 credit hours of postgraduate *250 study. In Devereaux, supra, the issue before the Court was whether after being qualified to hold a professorship, additional educational expense of the taxpayer occasioned by a policy change of the employer subsequent thereto was deductible as expense necessary for the maintenance of an already acquired position. There, the position was permanent in nature at the time of employment while here, as we have found, there was no permanency of petitioner's employment under a special certificate in the particular teaching position in which she sought to remain due to her lack of the minimum qualification therefor. In Johnson, supra, while it would appear to be factually on all fours with this case, there is a crucial difference in the facts concerning permanency of the involved teaching position. There, no issue was raised, argued, or decided with respect to the taxpayer's right to renewal of her emergency certificate (her contract contained specific provision for its renewal) and hence the retention of her position where another fully qualified teacher sought the position at the time of the renewal of the taxpayer's contract. Here, under the rules and regulations of the State *251 Board of Education, Era cannot be said to have possessed the teaching position she desired except on an annual basis and this was true because she lacked the minimum qualifications to hold it against one possessing those qualifications. Under respondent's regulation, it makes no difference that an educational expense is required by one's employer on the mere chance that, absent other conditions, one will be employed or is paid for the purpose of increasing one's skill in his trade or profession; if the expense is paid or incurred to acquire a job or position in a trade or profession, the expense is personal and nondeductible under section 162(a). With respect to Era's expense in obtaining the 2 hours of postgraduate credit which ultimately led to a Master's degree and a permanent teaching certificate, we find such expense to be properly deductible under both the statute and respondent's regulation as an expense necessary for the maintenance of her employment. Upon her attainment of a Bachelor's degree in the summer of 1958, she was issued a provisional certificate which resulted, upon her reemployment by the Lincoln Park School Board in September of that year, in her obtaining *252 rights under State law to renewal of her contract as mentioned above. These rights were no longer contingent upon the unavailability of a better qualified teacher, but were contingent only upon the attainment during the ensuing 5-year period of 15 additional hours of college credit and the conversion of the provisional certificate to a permanent certificate. It is clear from Regulation R-390.531.d of the State Board of Education that failure so to do would result in the lapse of her provisional certificate at the end of the 5-year period beginning with its issuance. As we understand this provision, Era, in that event, would then lose all qualification to hold her teaching position and she could not legally be retained therein. Having already acquired the minimum qualification for her position, the expense of attainment of the 2 hours of postgraduate college credit is deductible as an expense paid to maintain a position which she obtained at the opening of the 1958-59 school year in September of 1958. Decision will be entered under Rule 50. Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * ↩
2. Income Tax Regs. § 1.162-5 Expenses for education. (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. * * *
(b) * * * In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible.↩
3. We must assume, because the record is silent on the subject, that the total of 122 hours of college credit shown to have been obtained by petitioner prior to January 1, 1958, did not include 75 hours of the character of credit required under Regulation R-390.531.d of the State Board of Education. It may be that the full 18 hours of credit obtained by petitioner during 1958 prior to September 1 were required in order to attain the 75 hours necessary for minimum qualification. The record is silent on that point too.↩